## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JANICE S. GIBSON, Individually and on Behalf of All Other Persons Similarly Situated, | **Civil Action No.: 4:14-cv-0735** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| GLOBAL GEOPHYSICAL SERVICES, INC., RICHARD C. WHITE, RICHARD A. DEGNER, SEAN M. GORE, and PRAKASH MATHEW VERGHESE | |
| Defendants, | |

## CLASS ACTION COMPLAINT

Plaintiff Janice S. Gibson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Global Geophysical Services, Inc. ("Global" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of Global between February 7, 2011 and March 17, 2014, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Global and several of its current and former senior executives and directors under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule l0b-5 promulgated thereunder.

2.      Founded in 2003 and headquartered in Missouri City, Texas, Global and its subsidiaries provide an integrated suite of seismic data solutions to oil and gas exploration and production companies worldwide. The Company's seismic data solutions primarily include seismic data acquisition, microseismic monitoring, data processing, and interpretation services, which deliver data that enables the creation of high resolution images of the earth's subsurface, and reveals complex structural and stratigraphic details. It offers seismic data acquisition for land, transition zone, and shallow marine areas, including marshes, forests, jungles, arctic climates, mountains, and deserts.

3.      Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) for the years 2009 through the first three quarters of 2013, there Company's financial statements contained material misstatements and required restatement; (ii) the Company improperly recognized revenues during the relevant period; (iii) the were material weaknesses in the Company's internal controls; and (iv) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4.      On March 17, 2014, after the close of trading, Global issued a press release announcing earnings for the quarter and year ending December 31, 2013. In the press release, the Company stated the following with respect to the existence of material weaknesses in internal controls over financial reporting, and the lack of reliability of previously issued financial statements:

> Global also announced that, upon the recommendation of management and after consultation with its independent registered public accounting firm, UHY LLP, the Company's Audit Committee and Board of Directors have concluded that the Company's financial statements and related auditors' reports for each of the fiscal years ended December 31, 2012, 2011, 2010, and 2009 and the first, second and third quarters of 2013 should no longer be relied upon because of accounting errors resulting from material weaknesses in the Company's internal controls. The Company, along with its advisors and its independent auditor, is conducting a thorough review of these statements, and intends to restate its consolidated financial statements from 2011 onward as well as selected financial data for the 2009 and 2010 fiscal years in its 2013 Annual Report. In light of the restatements, the Company is unable to file its 2013 Annual Report on Form 10-K at this time. In addition, in connection with the restatements, management has concluded that certain material weaknesses exist in the Company's internal controls and intends to begin promptly to develop a plan to remediate the material weaknesses. Additional information relating to the restatements and the material weaknesses will be disclosed in the Company's Current Report on Form 8-K to be filed shortly with the Securities and Exchange Commission (SEC).
>
> The aggregate effect of the restatements on revenues for the years ended December 31, 2012 and 2011 based on preliminary unaudited information are estimated to be an increase of $4.7 million and a decrease of $4.8 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on income from operations before income tax for the years ended December 31, 2012 and 2011 based on preliminary, unaudited information are estimated to be an increase in income from operations before tax of $2.0 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods.
>
> The aggregate effect of the restatements on revenues for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be an increase of $0.4 million, a decrease of $0.7 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on the loss from operations before tax for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are

estimated to be a decrease of $0.4 million, a decrease of $0.6 million and an increase of $0.6 million.

5.      On this news, Global stock fell $0.71, or 60%, in trading on March 18, 2014, to close at $0.46 per share on extremely heavy volume.

6.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

8.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company is headquartered and conducts business in this District and the alleged misconduct was transacted in and emanated from this District.

9.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Global during the Class Period and has been damaged upon the revelation of the alleged corrective disclosures.

11.     Defendant Global is a Missouri City, Texas-based company that provides an integrated suite of seismic data solutions to the oil and gas industry worldwide. The Company's common stock is listed on the NYSE, an efficient market, under the ticker symbol "GGS."

12.     Defendant Richard C. White ("White") has served Global's Chief Executive Officer ("CEO"), Chairman, and President since October 25, 2012.

13.     Defendant Richard A. Degner ("Degner") served as Global's Chief Executive Officer ("CEO") and President until October 25, 2012.

14.     Defendant Sean M. Gore ("Gore") has served as  Global's Chief Financial Officer ("CFO") and Senior Vice President since January 2014.

15.     Defendant Prakash Mathew Verghese ("Verghese") was, at all relevant times until January 10, 2014, Global's Chief Financial Officer ("CFO).

16.     The defendants referenced above in ¶¶12-15 are referred to herein as the "Individual Defendants." Global and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

17.     Defendant Global is a Missouri City, Texas-based company that provides an integrated suite of seismic data solutions to the oil and gas industry worldwide. The Company's common stock is listed on the NYSE, an efficient market, under the ticker symbol "GGS."

## MATERIALLY FALSE AND MISLEADING STATEMENTS

18.    On February 7, 2011, Global issued a press release and filed a Form 8-K with the SEC announcing its financial results for the quarter and year ended December 31, 2010. The Company reported total revenues of $93.5 million in the fourth quarter of 2010 compared to $98.6 million for the same period in 2009. Net Loss for the fourth quarter of 2010 was $1.77 million, compared to $1.2 million in the same period of 2009. Loss per share for the fourth quarter of 2010 was ($0.05) compared with ($0.15) loss per share for the same period in 2009. For the year ended December 31, 2010, the Company reported total revenues of $254.7 million, compared to $312.8 million for the same period in 2009, net loss was $39.72 million, compared to $0.45 million in 2009 and loss per diluted share was $1.44 compared to $0.02 for 2009.

19.    On March 18, 2011, the Company filed its annual financial report on Form 10-K with the SEC which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-K included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20.    In the 10-K the Company stated:

In order to ensure that the information we must disclose in our filings with the Securities and Exchange Commission is recorded, processed, summarized and reported on a timely basis, our management, with the participation of its Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of its disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Based on their evaluation as of the end of the period covered by this Form 10-K, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures are effective.

21.     On April 28, 2011, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended March 31, 2011. The Company reported Net Income of $2.79 million and earnings per diluted share of $0.08 on $76.84 million of revenue, compared to a Net Loss of $7.24 million and loss per diluted share of $0.88 on revenue of $60.66 million for the same period in the prior year.

22.     On May 6, 2011, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have performed an evaluation of the design, operation and effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of March 31, 2011. Based on that evaluation, the Company's principal executive and principal financial officers have concluded that the Company's disclosure controls and procedures were effective as of March 31, 2011.

24.     On the July 28, 2011, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended June 30, 2011. The Company reported Net Income of $0.59 million and earnings per diluted share of $0.02 on $85.3 million of revenue, compared to a Net Loss of $12.06 million and loss per diluted share of $0.41 on revenue of $40.11 million for the same period in the prior year.

25.     On August 10, 2011, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have performed an evaluation of the design, operation and effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of June 30, 2011.  Based on that evaluation, the Company's principal executive and principal financial officers have concluded that the Company's disclosure controls and procedures were effective as of June 30, 2011.

27.     On the November 8, 2011, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended September 30, 2011. The Company reported Net Income of $0.88 million and earnings per diluted share of $0.02 on $110.13 million of revenue, compared to a Net Loss of $18.65 million and loss per diluted share of $0.52 on revenue of $60.47 million for the same period in the prior year.

28.     On November 9, 2011, the Company filed its quarterly financial report on Form 10-Q with the SEC, which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have performed an evaluation of the design, operation and effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of September 30, 2011.   Based on that evaluation, the Company's principal executive and principal financial officers have concluded that the Company's disclosure controls and procedures were effective as of September 30, 2011.

30.     On February 2, 2012, Global issued a press release and filed a Form 8-K with the SEC, announcing its financial results for the quarter and year ended December 31, 2011. For the quarter ending December 31, 2011, the Company reported Net Income of $1.4 million and earnings per diluted share of $0.04 on $113.09 million of revenue, compared to a Net Loss of $1.77 million and loss per diluted share of $0.05 on revenue of $93.46 million for the same period in the prior year. For the year ending December 31, 2011, the Company reported Net Income of $5.66 million and earnings per diluted share of $0.15 on $385.36 million of revenue, compared to a Net Loss of $39.72 million and loss per diluted share of $1.44 on revenue of $254.71 million for the same period in the prior year.

31.     On February 22, 2012, the Company filed its annual financial report on Form 10-K with the SEC which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-K included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     In the 10-K the Company stated:

Our management is responsible for establishing and maintaining adequate internal
control over financial reporting for the Company.

\*\*\*

 Management conducted an evaluation of the effectiveness of our internal control
over financial reporting based on    criteria established in Internal Control –
Integrated Framework issued by the Committee of Sponsoring Organizations of
the Treadway Commission (COSO). Based on this evaluation, management
concluded that the Company's internal control over financial reporting was
effective as of December 31, 2011.

33.     On April 25, 2012, the Company issued a press release and filed a Form 8-K with

the SEC, announcing its financial and operating results for the quarter ended March 31, 2012.

The Company reported Net Income of $6.93 million and earnings per diluted share of $0.19 on

$96.11 million of revenue, compared to Net Income of $2.79 million and earnings per diluted

share of $0.08 on revenue of $76.84 million for the same period in the prior year.

34.     On May 4, 2012, the Company filed its quarterly financial report on Form 10-Q

with the SEC which was signed by Defendants Degner and Verghese, and reiterated the

Company's previously announced quarterly financial results and financial position. In addition,

the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by

Defendants Degner and Verghese, stating that the financial information contained in the Form

10-Q was accurate and disclosed any material changes to the Company's internal control over

financial reporting.

35.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including
our principal executive officer, principal financial officer, and principal
accounting officer, we have evaluated the effectiveness of the Company
disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange
Act) as of March 31, 2012.  Based on that evaluation, the Company's principal
executive, principal financial officer, and principal accounting officer have
concluded that these controls and procedures were effective as of March 31, 2012.

36.     On  July 31, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended June 30, 2012. The Company reported Net Income of $2.55 million and earnings per diluted share of $0.07 on $97.37 million of revenue, compared to Net Income of $0.59 million and earnings per diluted share of $0.02 on revenue of $85.3 million for the same period in the prior year.

37.     On August 3, 2012, the Company filed its quarterly financial report on Form 10-Q with the SEC, which was signed by Defendants Degner and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Degner and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer, principal financial officer, and principal accounting officer, we have evaluated the effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of June 30, 2012.  Based on that evaluation, the Company's principal executive, principal financial officer, and principal accounting officer have concluded that these controls and procedures were effective as of June 30, 2012.

39.     On October 25, 2012, the Company issued a press release and filed a Form 8-K with the SEC, stating that Richard A. Degner resigned as President and Chief Executive Officer of the Company and that Richard C. White was appointed by the Board of Directors as the Company's President and Chief Executive Officer.

40.     On October 31, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended September 30, 2012. The Company reported Net Income of $5.81 million and earnings per diluted share of

$0.16 on $90.21 million of revenue, compared to Net Income of $.088 million and earnings per diluted share of $0.02 on revenue of $110.13 million for the same period in the prior year.

41.     On November 2, 2012, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by Defendants White and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants White and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     In the 10-Q the Company stated:

> Under the supervision and with the participation of our management, including our principal executive officer, principal financial officer, and principal accounting officer, we have evaluated the effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of September 30, 2012. Based on that evaluation, the Company's principal executive, principal financial officer, and principal accounting officer have concluded that these controls and procedures were effective as of September 30, 2012.

43.     On February 25, 2013, Global issued a press release and filed a Form 8-K with the SEC announcing its financial results for the quarter and year ended December 31, 2012. For the quarter ending December 31, 2012, the Company reported a Net Loss of $28.61 million and a loss per diluted share of $0.76 on $55.29 million of revenue, compared to Net Income of $1.4 million and earnings per diluted share of $0.04 on revenue of $113.09 million for the same period in the prior year. For the year ending December 31, 2012, the Company reported a Net Loss of $13.33 million and a loss per diluted share of $0.36 on $338.98 million of revenue, compared to Net Income of $5.66 million and earnings per diluted share of $0.15 on revenue of $385.36 million for the same period in the prior year.

44.     On March 5, 2013, the Company filed its annual financial report on Form 10-K with the SEC which was signed by Defendants White and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-K included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants White and Verghese, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     In the 10-K the Company stated:

Our management is responsible for establishing and maintaining adequate internal control over financial reporting for the Company.

***

Management conducted an evaluation of the effectiveness of our internal control over financial reporting based on     criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on this evaluation, management concluded that the Company's internal control over financial reporting was effective as of December 31, 2012.

46.     On the April 24, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended March 31, 2013. The Company reported a Net Loss of $11.54 million and a loss per diluted share of $0.31 on $83.41 million of revenue, compared to Net Income of $6.93 million and earnings per diluted share of $0.19 on revenue of $96.11 million for the same period in the prior year.

47.     On May 3, 2013, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by Defendants White and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by

Defendants White and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have evaluated the effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of March 31, 2013.  Based on that evaluation, the Company's principal executive and principal financial officer have concluded that these controls and procedures were effective as of March 31, 2013.

49.     On the August 5, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended June 30, 2013. The Company reported a Net Loss of $15.79 million and a loss per diluted share of $0.30 on $63.35 million of revenue, compared to Net Income of $2.55 million and earnings per diluted share of $0.07 on revenue of $97.37 million for the same period in the prior year.

**The Truth Begins to Emerge**

50.     On August 12, 2013, the Company filed a Form 12b-25 with the SEC, requesting an automatic five day extension to file their Form 10-Q for the period ending June 30, 2013. In the filing, the Company stated:

The registrant is unable to file its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2013, within the prescribed time period because the compilation, dissemination, review and finalization of the information required to be presented in the report could not be completed within the prescribed time period without unreasonable effort or expense.  The registrant expects to file its Quarterly Report on Form 10-Q as soon as practicable, and in no event later than the fifth calendar day following the prescribed due date.

51.     On this news, Global stock fell $0.32 or almost 11.5%, on heavy volume to close at $2.82 on August 13, 2013.

52.     On August 13, 2013, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by Defendants White and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants White and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

53.     In the 10-Q the Company stated:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have evaluated the effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of June 30, 2013.   Based on that evaluation, the Company's principal executive and principal financial officer have concluded that these controls and procedures were effective as of June 30, 2013.

54.     On the November 5, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the quarter ended September 30, 2013. The Company reported a Net Loss of $24.2 million and a loss per diluted share of $0.64 on $70.03 million of revenue, compared to Net Income of $5.81 million and earnings per diluted share of $0.16 on revenue of $90.21 million for the same period in the prior year.

55.     On November 12, 2013, the Company filed its quarterly financial report on Form 10-Q with the SEC, which was signed by Defendants White and Verghese, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants White and Verghese, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

56.     In the 10-Q the Company stated:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we have evaluated the effectiveness of the Company disclosure controls and procedures (as defined in Rule 13a-15(e) of the Exchange Act) as of September 30, 2013.  Based on that evaluation, the Company's principal executive and principal financial officer have concluded that these controls and procedures were effective as of September 30, 2013.

57.     The statements referenced in ¶¶ 18-56 above, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (i) for the years 2009 through the first three quarters of 2013 the Company's financial statements were materially false and misleading; (ii) the Company's reported revenues were materially false and misleading; (iii) there existed material weaknesses in the Company's internal controls;  and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

58.     On March 17, 2014, after the close of trading, Global issued a press release announcing earnings for the quarter and year ending December 31, 2013. In the press release, the Company stated the following in respect to the existence of material weaknesses in internal controls over financial reporting, the Company's previously reported revenues, and the lack of reliability of previously issued financial statements:

Global also announced that, upon the recommendation of management and after consultation with its independent registered public accounting firm, UHY LLP, the Company's Audit Committee and Board of Directors have concluded that the Company's financial statements and related auditors' reports for each of the fiscal years ended December 31, 2012, 2011, 2010, and 2009 and the first, second and third quarters of 2013 should no longer be relied upon because of accounting errors resulting from material weaknesses in the Company's internal controls. The Company, along with its advisors and its independent auditor, is conducting a thorough review of these statements, and intends to restate its consolidated financial statements from 2011 onward as well as selected financial data for the 2009 and 2010 fiscal years in its 2013 Annual Report. In light of the restatements,

the Company is unable to file its 2013 Annual Report on Form 10-K at this time. In addition, in connection with the restatements, management has concluded that certain material weaknesses exist in the Company's internal controls and intends to begin promptly to develop a plan to remediate the material weaknesses. Additional information relating to the restatements and the material weaknesses will be disclosed in the Company's Current Report on Form 8-K to be filed shortly with the Securities and Exchange Commission (SEC).

The aggregate effect of the restatements on revenues for the years ended December 31, 2012 and 2011 based on preliminary unaudited information are estimated to be an increase of $4.7 million and a decrease of $4.8 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on income from operations before income tax for the years ended December 31, 2012 and 2011 based on preliminary, unaudited information are estimated to be an increase in income from operations before tax of $2.0 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods.

The aggregate effect of the restatements on revenues for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be an increase of $0.4 million, a decrease of $0.7 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on the loss from operations before tax for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be a decrease of $0.4 million, a decrease of $0.6 million and an increase of $0.6 million.

59.     On this news, Global stock fell $0.71, or 60%, in trading on March 18, 2014, to close at $0.46 per share on extremely heavy volume.

60.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

61.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Global securities during the Class Period (the "Class"); and were damaged upon the revelation . Excluded from the Class are defendants herein, the officers and directors of

the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Global securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Global;

- whether the Individual Defendants caused Global to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Global securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

67.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Global securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Global securities between the time the defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

68.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

69.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I

**For Violations of §10(b) of the Exchange Act and Rule 10b-5
Against All Defendants**

70.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

72.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

Global securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Global securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

73.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Global securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Global' finances and business prospects.

74.      By virtue of their positions at Global, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

75.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Global securities from their personal portfolios.

76.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Global, the Individual Defendants had knowledge of the details of Global' internal affairs.

77.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Global. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Global' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Global securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Global' business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Global securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

78.     During the Class Period, Global securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Global securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Global securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Global securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

79.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

80.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

81.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.     During the Class Period, the Individual Defendants participated in the operation and management of Global, and conducted and participated, directly and indirectly, in the conduct of Global's business affairs.  Because of their senior positions, they knew the adverse non-public information about Global's misstatement of income and expenses and false financial statements.

83.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Global's financial condition and results of operations, and to correct promptly any public statements issued by Global which had become materially false or misleading.

84.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Global disseminated in the marketplace during the Class Period concerning Global's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Global to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Global within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Global securities.

85.     Each of the Individual Defendants, therefore, acted as a controlling person of Global.  By reason of their senior management positions and/or being directors of Global, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Global to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Global and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

86.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Global.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:   March 21, 2014

                                                  **ABRAHAM,       WATKINS,       NICHOLS,
                                                  SORRELS, AGOSTO & FRIEND**


                                                  _____ */s/ Sammy Ford IV*
                                                  Sammy Ford IV
                                                  State Bar No. 24061331
                                                  Federal Bar No. 950682
                                                  800 Commerce Street
                                                  Houston, TX 77002
                                                  Telephone: (713) 222-7211
                                                  Facsimile: (713) 225-0827

25

**POMERANTZ LLP**


_____*/s/ Jeremy A. Lieberman*_____
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
lfportnoy@pomlaw.com


Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com


J. Elazar Fruchter
**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 758-4000
Facsimile: (212) 758-4004
jfruchter@wohlfruchter.com

***Attorneys for Plaintiff***